**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAMARILLO HOSPITALITY LLC, et al., | Case No. 1:26-cv-01906 JLT CDB |
| Plaintiffs, | ORDER DENYING MOTION TO DISSOLVE (Docs. 4, 5) |
| v. | ORDER REDUCING TO WRITING TEMPORARY RESTRAINING ORDER |
| G6 HOSPITALITY LLC, et al., | |
| Defendant. | ORDER SETTING RESPONSE DEADLINE RE MOTION TO ENFORCE (Doc. 6) |

I.    **INTRODUCTION**

This is a dispute between Plaintiffs, Motel 6 and Studio 6 franchise operators in California, and franchisor Defendants. The operative First Amended Complaint (FAC), (*see* Doc. 1-2 at 9–37), alleges, among other things, that there is an ongoing dispute between the parties over the amount owed by Plaintiffs to Defendant G6 Hospitality, LLC, under their franchise agreements. (FAC, ¶ 25.) According to Plaintiffs, the parties engaged in good-faith discussions to resolve any contractual dispute and reached a verbal agreement to address outstanding payment issues, which was confirmed by performance. (*Id*., ¶¶ 26–27.) However, Plaintiffs allege that starting in late December 2025, G6 began threatening to and then did engage in coercive business practices, including resorting to a "self-help" mechanism to withhold moneys that should flow to Plaintiffs via various booking platforms by processing those payments

1

through a service called "Brand Collect." (*Id*., ¶ 46; *see also* Doc. 4 (describing Brand Collect as a "service that certain companies, like Booking.com and other online travel agents [ ] provide to their users to assure that bills are paid").)

Defendant G6 Hospitality LLC ("Defendant" or "G6")[1] removed this action from Kern County Superior Court on March 6, 2026 (Doc. 1), one day after that court issued a temporary restraining order requiring Defendant to release more than $1,000,000 in funds to Plaintiffs that Defendant is withholding under the allegedly unlawful "self-help" mechanism—a mechanism the state court described as "manifestly unlawful under California law," even if the parties' franchise agreement permits such withholdings. (*See* Doc. 4 at 23, hereinafter "TRO Tr." at p. 5.) In addition, the state court ordered Defendant to restore Plaintiffs' access to essential booking and reservation management platforms.[2] (*Id*. at 16.) The TRO required Defendant's compliance by March 10, 2026, and the payment by Plaintiffs of a $250,000 undertaking two days later. (*See* Doc. 4.)

Instead of complying with the TRO or seeking relief prior to the compliance deadline, Defendant waited until March 13, 2026 to file an emergency motion to dissolve the TRO. (Doc. 3.) On March 16, 2026, Defendant amended that motion. (Doc. 4.)[3] That same day, Plaintiffs filed an opposition to the motion to dissolve (Doc. 5) as well as a motion to enforce judgment and a request that this Court issue an order to show cause re contempt. (Doc. 6.) On March 17, 2026, Plaintiffs filed a supplemental opposition to the amended motion to dissolve. (Doc. 9.)

---

[1] It is undisputed that only Defendant G6 has been served with the FAC. (*See* Doc. 1-5; Doc. 4 at 5.) The FAC asserts that "Defendant Accor Franchising North America, LLC is the predecessor in interest to G6 Hospitality, LLC . . . ." (Doc. 1-2 at 11, ¶ 9.) G6 notes that it is not a party to the franchise agreements at issue in the FAC. (Doc. 4 at 5 n.1.) To the extent G6 is asserting it is not a proper party or not a proper subject of the TRO, it offers no specific argument in support of such an assertion. Considering the undisputed allegations that G6 asserts operational control over the accounts and platforms in dispute, (Doc. 4-1, ¶¶ 9–14), which, as Plaintiffs point out (Doc. 9 at 2), any assertion that G6 is not a proper party here appears to be without any basis in fact or law.

[2] According to Plaintiffs, on the morning of March 6, Defense counsel emailed Plaintiffs' counsel warning Plaintiffs that they planned to file an ex parte application to dissolve or modify the TRO in state court. (Doc. 6, ¶ 4.c.) A few hours later, Defendant informed Plaintiffs that it would be withdrawing that application. (*Id*., ¶ 4.d.)

[3] Neither version of Defendant's motion indicates any attempt to engage in meet and confer regarding its motion to dissolve, which is required by this Court's standing order. (Doc. 2-2.) This noncompliance could be grounds to deny the motion without prejudice. In the interest of expedience, and because further delay will prejudice only the Plaintiffs, the Court is addressing the motion notwithstanding the absence of any meet and confer. But the parties are warned that good faith compliance with the requirement is not optional and will be strictly enforced going forward.

2

The Court has reviewed the entire record and finds Defendant's motion to dissolve to be without merit. Instead, the Court reaffirms the TRO's continued validity, reduces the TRO to writing, and sets a deadline for Defendant to respond to the motion to enforce/for a show cause order.

**II.     MOTION TO DISSOLVE**

In a civil action removed from state court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. Essentially, "[a]fter removal, the federal court takes the case up where the State court left it off." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 887 (9th Cir. 2010) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 436 (1974)). "The federal court treats everything that occurred in the state court as if it had taken place in federal court." *Id.* (internal quotation and citation omitted). "Consequently, an order entered by a state court should be treated as though it had been validly rendered in the federal proceeding." *Id.* (internal quotation and citation omitted). After removal, "federal rather than state law governs the future course of proceedings." *Granny Goose Foods*, 415 U.S. at 437.

Here, Defendant moves to dissolve the TRO under "Federal Rule of Civil Procedure Rule 65(b)(4) and Local Rule 231(e) and applicable case law." (Doc. 4 at 2.) Rule 65(b)(4) provides as follows:

> Motion to Dissolve:  On 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

This language is facially inapplicable here, because the state court TRO was not entered "without notice." To the contrary, Defendant was provided notice of the motion on February 18 and 23, 2026 (*see* Doc. 6 at 27, ¶ 5), appeared at the initially scheduled hearing on the motion before Kern County Superior Court Judge Gregory A. Pulskamp on February 26, 2026 (*id*), at which time the Defense requested and was afforded additional time to oppose the motion. (*Id*.) Defendant then appeared through counsel at the continued hearing on March 5, 2026, where the

state court gave the parties numerous opportunities to explain their positions, the facts, and the extensive record. (*See generally* TRO Tr.)

Defendant next relies on Local Rule 231(e), which allows for a motion to modify or dissolve any TRO, regardless of notice. Generally, "[a] district court has inherent authority to modify a preliminary injunction in consideration of new facts." *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002) (citing *System Federation No. 91 v. Wright*, 364 U.S. 642, 647–48 (1961) ). Relatedly, "[a] party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 793 F. App'x 482, 484 (9th Cir. 2019) (internal citation and quotation marks omitted); *see also United Farm Workers v. Perdue*, No. 1:20-cv-01452 DAD JLT, 2020 WL 6939021, at *3 (E.D. Cal. Nov. 25, 2020) (applying Local Rule 231(e)). "Importantly, a party's subsequent challenge to preliminary injunctive relief 'must rest on grounds that could not have been raised before.'" *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, No. 25-CV-02847-AMO, 2025 WL 1168898, at *2 (N.D. Cal. Apr. 21, 2025) (quoting *Alto v. Black*, 738 F.3d 1111, 1120 (9th Cir. 2013)).

Defendant seems to be suggesting that the requisite changed circumstance warranting dissolution of the TRO is the post-removal applicability of the Federal Rules of Civil Procedure and *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). But Defendant generally argues nothing more than that the venue has shifted from state to federal court. This is insufficient. *See Santos v. Reverse Mortg. Sols., Inc.*, No. 12-3296-SC, 2012 WL 4891597, at *7 (N.D. Cal. Oct. 12, 2012) ("The only thing that has changed since entry of the preliminary injunction is the venue of this action, which has shifted from state to federal court. That change, however, is immaterial.").

### A.    *Winter* Factors

To the extent Defendant suggests that the state court TRO should be dissolved because it fails to satisfy *Winter*'s requirements, the Court briefly addresses those arguments. (Doc. 4 at 8–12.) The standard for issuing a TRO in federal court is the same as the standard for issuing a

preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical"). When seeking a TRO or PI, plaintiffs must establish: (1) they are "likely to succeed on the merits" of their claims, (2) they are "likely to suffer irreparable harm in the absence of a preliminary injunction," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20 (2008). The moving party has the burden to "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Thus, the moving party has "the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Defendant first argues that the state court failed to find a likelihood of success on the merits. However, in this Circuit, a court may weigh the request for a preliminary injunction with a sliding-scale approach. *Alliance*, 632 F.3d at 1135. Accordingly, a stronger showing on the balance of hardships may support the issuance of a preliminary injunction where there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. Here, the state court indicated that the "plaintiffs certainly have some strong arguments," which this Court finds to be equivalent to stating that there are serious questions on the merits.

The state court also made a finding about the balance of the harms:

> I do think that the 9 plaintiffs have established that they are likely to suffer much greater harm here without a temporary restraining order in place and defendants essentially cutting off the blood flow, really, or the literal circulation of their entire businesses which without the Court acting would, by default, pretty much rule in favor of the defense."

(TRO Tr. at p. 10.) Defendant argues here that the balance of the equities instead favors the Defense because it will suffer irreparable harm. (Doc. 4 at 10.) Defendant's arguments on this issue do not rest on any facts or authority that could not have been raised before, so are insufficient to support dissolution under the circumstances.[4] This includes Defendant's argument

---

[4] Defendant suggests that the state court based its findings only on Plaintiffs' "self serving and inaccurate statements" and never considered the declaration submitted by Defendant the morning of the continued hearing. (*See* Doc. 4 at 9,

about one of the Plaintiffs being in bankruptcy and related equitable issues. (*See id*. at 11 ("If the Plaintiffs businesses are going to fail they will fail because they cannot pay their licensing fees, it is because they are mismanaged, poorly operated, or just generally unprofitable. Plaintiff's remedy lies with bankruptcy court.").) This proceeding is not the place for Defendant to seek a rebalancing of the equities.

Finally, the Defense maintains that "there are no public interests involved in this TRO," arguing "[a] court may only claim irreparable harm to the general public in limited circumstances." (Doc. 4 at 12.) This misunderstands the public interest prong of the *Winter* test. The question under *Winter* is not whether the public is <u>harmed</u> by the <u>conduct</u> in question but rather whether the <u>injunction</u> itself is in the <u>public interest</u>. In *Winter*, for example, the Supreme Court discussed the balance between the plaintiffs' "serious[ ]" interest in protecting marine mammals from injury caused by the U.S. Navy's use of sonar against the Navy's own interest in deploying an adequately trained antisubmarine force. 333 U.S. at 26. In that context, "[t]he public interest in conducting training exercises with active sonar under realistic conditions plainly outweighs the interests advanced by the plaintiffs." *Id*. Here, Defendant entirely fails to contend with the fact that the operative complaint in this case seeks to enforce the California Franchise Relations Act (CFRA), which, according to the Ninth Circuit, represents a "strong public policy of the State of California" with respect to franchisor-franchisee relations. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

## B. Form of Relief

Defendant next argues that the state court TRO improperly granted monetary relief. (Doc. 4 at 7–8.) It is true that a "necessary prerequisite" to an equitable remedy is "the absence of an adequate remedy at law," *Dairy Queen, Inc. v Wood*, 369 U.S. 469, 478 (1962), and that

---

11.) Though it is true that Judge Pulskamp did not review that 11th hour declaration, he did allow Defendant to summarize that evidence. (TRO Tr. at p. 24.) This is entirely normal for an emergency proceeding in any busy court, including this one. It certainly does not rise to a Rules violation or a basis for reconsideration.

Defendant also argues that the state court issued the TRO without understanding the financial system it ordered to be reversed. (Doc. 4 at 13.) Though it is true the state court admitted it did not understand the systems in question as well as the parties, it again permitted the parties to explain any relevant aspects of those systems during oral argument. (TRO Tr. at p. 15.) The fact that Defendant did not fully avail itself of this opportunity or failed to persuade the state court of its position(s) does not render the TRO invalid or worthy of dissolution.

monetary harm typically does not constitute irreparable harm for purposes of an injunction. *See Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). However, this principle is not unique to federal court. *See Dep't of Fish & Game v. Anderson-Cottonwood Irrigation Dist.*, 8 Cal. App. 4th 1554, 1564 (1992) ("A party seeking injunctive relief must show the absence of an adequate remedy at law."); *Friedman v. Friedman*, 20 Cal. App. 4th 876, 890 (1993), *as modified on denial of reh'g* (Dec. 27, 1993 ("[M]ere monetary loss does not constitute irreparable harm in the context of proposed injunctive relief," with some exceptions.). Thus, this issue could have been raised before the state court. Moreover, the Court does not believe it is fair to characterize the TRO as ordering "monetary relief." Rather, it appears to be undisputed that the funds being held funds would normally flow to Plaintiffs, absent Defendant's self-help to withhold them to cover disputed amounts owed under the franchise agreements. (*See* Doc. 4-1, ¶ 10 (Anuj Ladha describing the credits in Versapay Plaintiffs "can use to pay G6" for the outstanding Accounts Receivable).) Moreover, the unfreezing of assets is not an unheard-of equitable remedy in federal court. *See, e.g., First Interstate BancSystem, Inc. v. Not Afraid*, No. CV 19-10-BLG-SPW, 2019 WL 498733, at *3 (D. Mont. Feb. 8, 2019) (requiring bank to allow recognized leader of Crow Tribe of Indians to access Tribe's accounts despite internal leadership dispute).

For similar reasons, the TRO is not, as Defendant suggests (Doc. 4 at 12), an improper mandatory injunction. It orders Defendant to cease its allegedly unlawful withholding and to restore blocked access to otherwise available platforms and technology.

The Court is unpersuaded by other, related arguments. For example, Defendant suggests the alleged harm is purely economic. (Doc. 4 at 13.) This disregards direct Ninth Circuit authority to the contrary. As the state court indicated, the dispute threatened the viability of Plaintiffs' businesses. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) ("The threat of being driven out of business is sufficient to establish irreparable harm.").

## C.     Adequacy of Bond

Defendant also argues that the bond required by the state court, $250,000, is "grossly inadequate" because it exposes Defendant to "potential losses several times greater than the

7

bond." (Doc. 4 at 14.) The state court concluded $250,000 was an appropriate undertaking after hearing from both sides about the amount in dispute. Again, Defendant presents nothing new, nor does it point to any federal authority suggesting the bond calculation is required to be dramatically different in federal court.

Nor is the Court persuaded by Defendant's complaint that the "structure of the order defeats the purpose of the bond." (Doc. 4 at 14.) Defendant contends that because the TRO required it to release funds within three business days, but Plaintiff was not required to post bond until two days later, "if Plaintiffs fail to post the bond, Defendants will already have suffered the financial harm the bond was meant to prevent." (*Id*. at 14–15.) Again, this is an issue that was at least in part placed before the state court judge. (*See* TRO Tr. at pp. 20–23.) Nothing prevented Defendant from objecting to that timing then. Moreover, it is reasonable to assume that the state court judge considered the fact that Plaintiffs required the restoration of their cash flow to come up with the bond amount.

### D.    Duration of the TRO

During the TRO hearing in state court, the parties agreed that a further hearing of May 20, 2026 for the conversion of the TRO into a preliminary injunction was reasonable. (TRO Tr. at pp. 19-20.) Defendant argues that Rule 65(b)(2) limits the duration of the TRO to 14 days, with a possible extension for an additional 14 days. (Doc. 4 at 15.) Again, this does not accurately reflect the terms of the Rule. A TRO issued without notice may not exceed 14 days. Fed. R. Civ. P. 65(b)(2) (subject to the one-time extension for good cause). However, "[w]hen a temporary restraining order is issued with notice and after a hearing, however, the 14-day limit for such orders issued without notice does not apply." *Pac. Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp. 3d 1219, 1223 n.1 (D. Or. 2016) (emphasis added). Thus, the Court has discretion over the appropriate duration of a TRO entered with notice. *Optimistic Invs. LLC v. Kangaroo Mfg. Inc.*, No. CV-21-02212-PHX-MTL, 2022 WL 1203873, at *10 (D. Ariz. Apr. 22, 2022). "Nevertheless, absent consent of the parties, '[a] court may not extend a 'TRO' indefinitely, even upon notice and a hearing.'" *Pac. Kidney*, 156 F. Supp. 3d at 1223 n.1 (quoting *Horn Abbot Ltd. v. Sarsaparilla Ltd.*, 601 F. Supp. 360, 368 n. 12 (N.D. Ill. 1984)). Because the Defense had an

opportunity to address the duration of the TRO before the state court, its present argument, which is limited to the erroneous legal contention that it per se impermissible for a TRO to last 60 days, is without merit. Moreover, as Plaintiffs point out (Doc. 5 at 10), counsel for the Defense agreed at the state court hearing that the schedule was reasonable. (TRO Tr. at pp. 18–20.)

### E.    Failure to Reduce TRO to Writing

Finally, Defendant adds the argument that, though the TRO hearing transcript reflects that Plaintiffs' counsel was instructed to prepare a written order, no signed written order was entered. (Doc. 4 at 15 (citing TRO Tr. at pp. 20).) Defendant complains that "[w]ithout a written order clearly defining the relief granted, for example, to which Plaintiff Defendants are to pay what amount, the TRO is ambiguous and unenforceable." (Doc. 4 at 15.)

As Plaintiffs note, this case was removed before any written order could be signed by the state court. This problem is of Defendant's own making. Moreover, this order renders the issue moot.

## III.    CONCLUSION AND ORDER

Fort the reasons set forth above:

1.    Defendant's motion to dissolve the TRO (Doc. 4) is **DENIED**.

2.    The Temporary Restraining Order issued by the Kern County Superior Court on March 5, 2026 (the "State Court TRO") remains in full force and effect pursuant to 28 U.S.C. § 1450. Pursuant to that Order:

a.    Defendants G6 Hospitality LLC, formerly known as Accor Franchising North America, LLC, and their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of this Order, are hereby **ORDERED** to immediately comply with all provisions of the State Court TRO, including but not limited to:

1.    Within 24 hours of service of this Order, release to Plaintiffs the $653,355 currently held in the Versapay account;

2. Within 24 hours of service of this Order, release to Plaintiffs the approximately $406,958 in February 2026 OTA reservation proceeds from Plaintiffs' properties;

3. Within 24 hours of service of this Order, restore full primary administrative access and account privileges to all of Plaintiffs' authorized personnel (including corporate-level personnel and property-level General Managers) for all Online Travel Agency platform accounts including but not limited to Booking.com and Expedia accounts for all properties operated by Plaintiffs;

4. Within 24 hours of service of this Order, relinquish and transfer primary account holder status for all Online Travel Agency platform accounts back to Plaintiffs or Plaintiffs' designated representatives;

5. Within 24 hours of service of this Order, restore Plaintiffs' full access to Hotel Key point-of-sale system, central reservation systems, and Freedom Pay credit card processing system;

6. Immediately cease all interception, withholding, or diversion of reservation proceeds from Online Travel Agency platforms and ensure that all future reservation proceeds from Online Travel Agency platform reservations flow directly from the Online Travel Agency platforms to Plaintiffs pursuant to Plaintiffs' independent contracts with said platforms;

7. Immediately cease charging Plaintiffs duplicative fees consisting of both Online Travel Agency commissions and Cost Per Direct Booking fees for the same reservations.

b. Defendants shall file with this Court, no later than 48 hours after service of this Order, a declaration under penalty of perjury detailing all actions taken to comply with this Order, including:

10

1.    Confirmation of funds released, with transaction details;

2.    Confirmation of OTA access restored, with screenshots or other evidence;

3.    Confirmation of system access restored;

4.    Confirmation of cessation of Brand Collect interception.

3.    Defendant shall file any response to Plaintiffs' motion to enforce/ for an order to show cause re contempt on or before March 23, 2026. Of course, compliance with the above may moot that motion and purge any possible contempt.

IT IS SO ORDERED.

Dated: March 18, 2026

_____
JENNIFER L. THURSTON
U.S. District Judge

11