**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAMARILLO HOSPITALITY LLC, et al., | Case No. 1:26-cv-01906 JLT CDB |
| Plaintiffs, | ORDER DISCHARGING ORDER TO SHOW CAUSE RE CONTEMPT |
| v. | (Doc. 24) |
| G6 HOSPITALITY LLC, et al., | |
| Defendants. | |

The Court incorporates herein the procedural history of this case recited most recently in its April 24, 2026 Order granting in part Plaintiffs' request for an order to show cause re: contempt. (Doc. 24 ("OSC") at 1–3.) The Court emphasizes here that both sides have unnecessarily multiplied these proceedings by submitting confusing and incomplete filings (*id*. at 7 n. 2, 9 n. 4, 13 n. 6, 15 n. 7, 16 n. 8, 17 n. 9), relying on inadmissible material to support certain arguments (*id*. at 5 (discussing "transcript" of meet and confer discussions created by Artificial Intelligence tool)), continuing to press issues that have been resolved for all material purposes (*id*. at 6–7), and generally failing to engage in good faith efforts to resolve matters that do not require judicial intervention (*id*. at 4–5). The OSC reflects this collective downward spiral by granting the request for an OSC only in part: requiring Defendant to show cause why it should not be held in contempt for failing to comply with this Court's March 18, 2026 Order to release to Plaintiffs "approximately $406,958 in February 2026 [Online Travel Agency] reservation proceeds from

1

Plaintiffs' properties," (*id*., at 18, citing Doc. 10 at 9–10), while simultaneously refusing to issue an OSC as to <u>numerous</u> other issues. (*See generally* Doc. 24.)

Crucially, the Court offered Defendant the opportunity to purge any contempt by paying the $406,958 within 48 hours. (Doc. 24 at 18.) Given that the OSC issued at 11:45 a.m. on Friday, April 24, 2026, the deadline technically expired at that time on Sunday, April 26, and thus would "run until the same time" on Monday, April 27. *See* Fed. R. Civ. P. 6(a)(2). Instead of sending the funds on that day, Defendant appears to have initiated a wire transfer at some point on Tuesday, April 28, with funds arriving on Wednesday, April 29. (*See* Doc. 41 at 2; Doc. 38, ¶ 3.) Though Defendant once again failed to comply with a Court-imposed deadline and offers only the weakest of excuses for the tardiness (Doc. 38), Plaintiffs again fail to explain how such a *de minimis* delay caused them any harm.

Not satisfied by the $406,958 wire transfer made over Defendants' persistent protest that Plaintiffs owe them far more,[1] Plaintiffs insist that this is not "a story about a one-day calendaring error on the purge deadline" but that instead Defendant's contempt involves "refusal to pay for 42 days (50 days from the state court ruling)" after this Court's March 18, 2026 Order. (Doc. 44 at 1–2.) Plaintiffs push for contempt sanctions to "compensate Plaintiffs for losses sustained" and "award Plaintiffs their reasonable attorney's fees and costs incurred in enforcing compliance." (*Id*. at 6.)

Though the Court retains authority to impose compensatory contempt sanctions, *Whittaker Corp. v. Execuair Corp*., 953 F.2d 510, 517 (9th Cir. 1992), it exercises its considerable discretion not to do so here. *Just Goods, Inc. v. Eat Just, Inc*., No. 23-16100, 2024 WL 4850827, at *4 (9th Cir. Nov. 21, 2024), *citing Falstaff Brewing Corp. v. Miller Brewing Co*., 702 F.2d 770, 784 (9th Cir. 1983)) (The "imposition and selection of particular sanctions are matters left to the sound discretion of the trial court."). Among other things, Plaintiffs fail to demonstrate how any delays have harmed them. In an apparent attempt to show such harm, Plaintiffs argue they "were forced to divert resources to enforcement proceedings, and Plaintiffs' twelve hotel

---

[1] Defendants have now followed up on these assertions with applications for writs of attachment. (Docs. 27–37)

2

properties suffered ongoing cash flow shortfalls that threatened their ability to meet operational costs." (Doc. 44 at 3, citing Doc. 18-2, ¶¶ 31–32[2].) But these generic assertions of a cash flow crisis do not demonstrate compensable harm. In addition, Plaintiffs assert that Defendant's conduct forced them to obtain $650,000 in temporary financing that came due starting May 1, 2026. (Doc. 18-2, ¶ 34.) But Defendant wired Plaintiffs $653,355 on March 20 (Doc. 24 at 6) and $406,958 on April 29 (Docs. 38, 41). Given the timing of those payments relative to the loan repayment deadline, Plaintiffs fail to demonstrate harm[3] and thus have failed to justify the imposition of compensatory sanctions related to their temporary loans.

The Court likewise declines to impose any attorney's fees or costs-related sanctions. Plaintiffs' request for an OSC was only partially successful and the issue on which Plaintiffs succeeded could have been presented with much greater precision and efficiency. Instead, any true disputes were buried under multiple peripheral issues and inadmissible evidence. The Court spent far more time untangling the presentations than the parties possibly could have spent briefing the one topic on which the OSC issued.[4]

For all these reasons, the April 2, 2026 Order to Show Cause is **DISCHARGED**.

IT IS SO ORDERED.

Dated:    **May 19, 2026**

_____
UNITED STATES DISTRICT JUDGE

---

[2] The cited paragraphs do not concern a cash flow crisis, so the Court assumes Plaintiffs meant to cite ¶¶ 33–34.

[3] The Court will not speculate about the terms of those loans.

[4] This conduct is intolerable to any court but especially to this one, whose extremely limited judicial resources are stretched over enormous caseloads. It will no longer squander those limited resources on those who do not value them. Thus, any further filings **SHALL** be supported by concise briefs, which rely on admissible evidence. Failure to comply will result in the Court exercising its inherent authority to control its proceedings to strike offending briefs and imposing sanctions.