UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMARILLO HOSPITALITY LLC, *et al.*,<br>Plaintiffs,<br>v.<br>G6 HOSPITALITY LLC, *et al.*,<br>Defendants. | Case No. 1:26-cv-01906-JLT-CDB<br>FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT AND TO REMAND<br>(Doc. 26)<br>**<u>14-DAY OBJECTION PERIOD</u>** |

Pending before the undersigned[1] is the motion of Plaintiffs Camarillo Hospitality LLC, Santa Barbara Hospitality LLC, Hemet Hospitality LLC, Bayside Hospitality LLC, Tumm Hospitality LLC, JHMM Hospitality LLC, HLM Hospitality LLC, Azure Investment Group LLC, Om Sri Ram Hospitality LLC, Om Sri Sai Hospitality LLC, and Tujhmm Inc. (collectively, "Plaintiffs") for leave to file a second amended complaint (SAC") and to remand the action, filed on April 29, 2026. (Doc. 26). On May 12, 2026, Defendants G6 Hospitality LLC ("G6") and Accor Franchising North America, LLC ("Accor") (collectively, "Defendants") filed an opposition to the motion, and on May 15, 2026, Plaintiffs replied. (Docs. 42, 45). The Court deemed the motion submitted on the papers without a hearing. (Doc. 40); *see* Local Rule 230(g). For the reasons set forth below, the undersigned will recommend Plaintiffs' motion for leave to file a SAC and to remand be granted.

///

////

[1] On May 13, 2026, the presiding district judge referred the pending motion for leave to file a SAC and to remand to the undersigned for the preparation of findings and recommendations. (Doc. 43).

# I. Relevant Background[2]

## A. Procedural History[3]

Plaintiffs initiated this action with the filing of a complaint on January 27, 2026, and the operative first amended complaint ("FAC") on February 4, 2026, in the Kern County Superior Court against Defendants. (Doc. 1). On March 5, 2026, the state court issued a temporary restraining order against Defendants (the "state court TRO"). *See id.* The state Court TRO required Defendant G6 to release more than $1,000,000 in funds to Plaintiffs that G6 is withholding under the allegedly unlawful "self-help" mechanism—a mechanism the state court described as "manifestly unlawful under California law," even if the parties' franchise agreement permits such withholdings. (Doc. 10 at 2) (citing Doc. 4 at 23). In addition, the state court ordered G6 to restore Plaintiffs' access to essential booking and reservation management platforms. *Id.* (citing Doc. 4 at 16). The state court TRO required G6's compliance by March 10, 2026, and the payment by Plaintiffs of a $250,000 undertaking two days later. *Id.*

On March 6, 2026, Defendants removed the action to this Court. (Doc. 1). Instead of complying with the state court TRO or seeking relief prior to the compliance deadline, G6 waited until March 13, 2026, to file a motion to dissolve the state court TRO and later amended that motion on March 16, 2026. (Docs. 3, 4). That same day, Plaintiffs filed an opposition to the motion to dissolve as well as a motion to enforce the judgment of the state court order and a request that this Court issue an order to show cause re contempt. (Docs. 5, 6). On March 17, 2026, the Court preliminarily reviewed the matter, determined the notice of removal did not contain material related to Plaintiffs' *ex parte* application for a TRO and Plaintiffs' reply thereto, and therefore ordered Defendants to immediately supplement the record with those filings. (Doc. 7). That same day, Defendants filed a supplement to the notice of removal pursuant to the Court's direction, and Plaintiffs filed a supplemental opposition to the amended motion to dissolve. (Docs. 8, 9).

On March 18, 2026, the Court entered an order denying Defendants' motion to dissolve,

---

[2] The Court incorporates the relevant factual and procedural background summarized in the Court's order denying Defendants' motion to dissolve. *See* (Doc. 10 at 1-3).

[3] References to filings herein are to the CM/ECF-assigned page number.

reduced to writing the state court-issued TRO, and set a briefing schedule on Plaintiffs' motion to enforce the judgment of the state court order. (Doc. 10). On March 25, 2026, Defendants filed an answer to the FAC and a counterclaim against Plaintiffs. (Doc. 17). Plaintiffs/counterclaimants filed an answer to the counterclaim on April 29, 2026. (Doc. 25).

On April 24, 2026, the Court granted in part Plaintiffs' motion to enforce and for an order to show cause regarding contempt, and ordered Defendants to show cause in writing why it should not be held in contempt for failing to comply with the Court's March 18, 2026, order to release to Plaintiffs the approximately $406,958 in February 2026 online travel agency ("OTA") reservation proceeds from Plaintiffs' properties. (Doc. 24).

On May 6, 2026, the Court reviewed Plaintiffs' *ex parte* request to accelerate briefing on the pending motion for leave to file a SAC and to remand and set a briefing schedule on the motion. (Doc. 40). The Court held all of Defendants' requests for writs of attachment (Docs. 27, 28, 29, 31, 32, 33, 34, 35, 36, 37) in abeyance pending resolution of the motion to amend. *Id.* On May 19, 2026, the Court discharged the order to show cause regarding contempt. (Doc. 46).

**B. Plaintiffs' FAC**

Plaintiffs, Motel 6 and Studio 6 franchise operators in California, initiated this dispute with franchisor Defendants. (Doc. 10 at 1). The FAC alleges, among other things, that there is an ongoing dispute between the parties over the amount owed by Plaintiffs to Defendant G6 Hospitality, LLC, under their franchise agreements. (Doc. 1-2 at 9-37 ("FAC")); *See id.* ¶ 25. According to Plaintiffs, the parties engaged in good-faith discussions to resolve any contractual dispute and reached a verbal agreement to address outstanding payment issues, which was confirmed by performance. *Id.* ¶¶ 26-27. However, Plaintiffs allege that starting in late-December 2025, G6 began threatening to and then did engage in coercive business practices, including resorting to a "self-help" mechanism to withhold moneys that should flow to Plaintiffs via various booking platforms by processing those payments through a service called "Brand Collect." *Id.* ¶ 46; (Doc. 10 at 2) (describing Brand collect as a "service that certain companies, like Booking.com and other online travel agents [ ] provide to their users to assure that bills are paid") (citing Doc. 4).

Plaintiffs assert seven causes of action in the FAC, including for: (1) breach of franchise agreements; (2) breach of verbal payment agreement; (3) breach of implied covenant of good faith and fair dealing; (4) violations of California Franchise Relations Act ("CFRA"), Cal. Bus. & Prof. Code § 20000 *et seq.*; (5) unfair business practices under Cal. Bus & Prof. Code § 17200 *et seq.*; (6) tortious interference with prospective economic advantage; and (7) declaratory relief under Cal. Code Civ. Proc. § 1060. *See* FAC at 24-35.

In the prayer for relief, Plaintiffs seek compensatory damages, consequential damages, restitution, and for declaratory relief. *Id.* at 36-37.

**C. Notice of Removal**

In the notice of removal, Defendants invoke this Court's jurisdiction under the diversity provisions of 28 U.S.C. § 1332 as a civil action between citizens of different states and with a matter in controversy exceeding the sum of $75,000, exclusive of interest and costs. (Doc. 1 at 2). Defendants contend complete diversity exists as Plaintiffs are California limited liability companies and corporations with principal places of business in California, noting that Plaintiff Hemet Hospitality LLC "has been terminated with the California Secretary of State[,]" while Defendants G6 and Accor are corporations both incorporated in the State of Delaware with their principal place of business in the State of Texas. *Id.* at 2-3.

## II. <u>Governing Authority</u>

Rule 15 permits a plaintiff to amend the complaint once as a matter of course no later than 21 days after service of the complaint or 21 days after service of a responsive pleading or motion to dismiss, whichever is earlier. *See* Fed. R. Civ. P. 15(a)(1). After such time has passed or plaintiff has once amended their complaint, amendment may only be by leave of the court or by written consent of the adverse parties. Fed. R. Civ. P. 15(a)(2).

Granting or denying leave to amend a complaint under Rule 15 is within the discretion of the court. *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir, 1981); *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011) ("refusing

Chudacoff leave to amend a technical pleading error, albeit one he should have noticed earlier, would run contrary to Rule 15(a)'s intent.").

A court ordinarily considers five factors in assessing whether to grant leave to amend: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). However, where, as here, amendment would include adding a diversity-destroying defendant, the standard for determining whether to allow post-removal joinder is set forth in 28 U.S.C. § 1447(e): "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "Under § 1447, whether to permit joinder of a party that will destroy diversity jurisdiction remains in the sound discretion of the court[.]" *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000) (hereinafter, "*IBC*").

In assessing whether to grant leave to amend to add non-diverse defendants, courts ordinarily consider six factors: "(1) whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would preclude an original action against the new defendants in state court; (3) whether there has been unexplained delay in requesting joinder; (4) whether joinder is intended solely to defeat federal jurisdiction; (5) whether the claims against the new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff." *Id.* (citation omitted). The *Nunes* factors are used by courts to determine allowance of amendment generally and, though there is overlap between the *Nunes* factors and the *IBC* factors, courts use the latter factors to more closely scrutinize amendment when the proposed amendment will defeat diversity jurisdiction. *Id.*

## III. Parties' Contentions

Plaintiffs move for leave to file the proposed SAC attached to the motion adding as defendants Anuj Ladha, Sonal Sinha, and G6 Hospitality Franchising LLC ("G6HF") and for remand to the Kern County Superior Court pursuant to 28 U.S.C. § 1447(e) on the basis that complete diversity is lacking as proposed defendant Anuj Ladha is an individual residing in the

State of California and his joinder destroys complete diversity and requires remand. (Doc. 26 at 1-2, 7); *see* (Doc. 26-1 at 5-49 ("Ex. A")) (proposed SAC). Plaintiffs assert the amendment satisfies every equitable factor and that the addition of G6HF is necessary because "it is the actual franchisor that executed the Franchise Agreements" at issue. *Id.* at 8.

In opposition, Defendants characterize Plaintiffs' motion as "nothing more than forum shopping" to have this matter decided by a purportedly "friendlier" state court. Separately, Defendants argue Plaintiffs have delayed seeking to amend for "almost two months." (Doc. 42 at 2-3). Specifically, Defendants argue Plaintiffs knew of the two individual defendants Plaintiffs seek to add (Sonal Sinha and Anuj Ladja) and their attempts to collect the unpaid amounts Plaintiffs owed to G6 back in 2023 but "purposely delayed" seeking to amend and remand until they decided state court was a "more beneficial route" and solely to "destroy diversity." *Id.* at 5-6. Additionally, Defendants assert the Court should deny joinder of G6HF as that party is formerly known as Accor, who is already a Defendant-party to this action. *Id*. Defendants argue they will be prejudiced economically and by a "waste of both federal and state judicial resources" if amendment is permitted, and as to futility, that Plaintiff's entire case is "built upon a false premise" as to the proper applicability of AB 676. *Id.* at 7-8. Regarding joinder, Defendants contend the individual company executives proposed as defendants "are not required for just adjudication and Plaintiffs will not be harmed or prejudiced if the Court denies their motion." *Id.* at 9.

In reply, Plaintiffs contend Defendants' opposition is premised upon a merits standard that is not applicable at this joinder stage. (Doc. 45 at 1). Plaintiffs argue Defendants fail to address the theory pled in the proposed SAC as to the proposed individual defendants' direct participation. *Id.* at 3-4.

## IV. <u>Discussion</u>

The undersigned addresses the relevant *IBC* factors below.

### A. Need for Joinder Under Federal Rule of Civil Procedure 19(a)

#### 1. <u>Governing Authority</u>

"In determining whether to permit joinder of a non-diverse party after removal, the court considers whether the added party would meet Rule 19's standard for a necessary party." *Chavolla*

*v. Darling Ingredients Inc.*, No. 2:25-cv-01031-DAD-SCR, 2025 WL 3771349, at *4 (E.D. Cal. Dec. 31, 2025). A necessary party has "an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy … by adjusting all the rights involved in it." *CP Nat'l. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991). "The standard is met when failure to join will lead to separate and redundant actions," but it is not met when "defendants are only tangentially related to the cause of action or would not prevent complete relief." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1022 (C.D. Cal. 2002) (citing *IBC*, 125. F Supp. 2d at 1012).

2. Analysis

Plaintiff argues that Mr. Ladha, Mr. Sinha, and G6HF meet the standard under Rule 19(a) as the individual defendants are "central actors who personally directed the tortious conduct and against whom Plaintiffs seek punitive damages[,]" G6HF is "the actual contracting party to the Franchise Agreements[,]" and without these defendants, Plaintiffs cannot be afforded complete relief and failure to join them will "lead to wasteful, parallel litigation in state court." (Doc. 26 at 16).

Defendants contend that the proposed individual defendants "are not required for just adjudication" and Plaintiffs will not be harmed if they are not joined in this action because Plaintiffs' SAC seeks damages "to be taken solely by the G6 [corporate] Defendants." (Doc. 42 at 9).

In the proposed SAC, Plaintiffs seek to add allegations about a new defendant, Sonal Sinha, the CEO of G6 Hospitality, who, "[a]s the highest-ranking executive officer, … maintains authority over G6's operational and strategic decisions, including the authorization, and ratification of the adverse actions taken against Plaintiffs." Ex. A ¶ 9. The proposed SAC also names as a new defendant Anuj Ladha, an individual who resides in Saratoga, California, and is the Vice President of G6 Hospitality LLC, and who, according to the proposed new allegations, "personally designed, directed, and executed the Brand Collect scheme at issue in this action, including personally directing the interception of Plaintiffs' OTA reservation proceeds, personally directing communications with third-party vendors … to suspend Plaintiffs' access to essential hotel

operating systems, and personally issuing ultimatums and threats of termination to Plaintiffs." *Id.* ¶ 10. Additionally, the proposed SAC names G6HF as a corporate defendant who is an entity "that executed the Franchise Agreements with each Plaintiff for the right to operate Motel 6 and Studio 6 hotel properties." *Id.* ¶ 11.

Plaintiffs seek to add an eighth cause of action for conversion against all Defendants based on allegations that Defendants Sinha and Ladha are individually liable because "they each actively participated in the wrongful exercise of dominion over Plaintiffs' funds." Plaintiffs specifically seek to alleged that "Vice President Ladha personally directed the implementation of the Brand Collect scheme and the interception of the funds, while CEO Sinha authorized and ratified the interception." *See id.* ¶¶ 148, 149. Plaintiffs further allege damages "not less than $1,060,313, plus interest, consequential damages, and punitive damages against Defendant Ladha pursuant to Civil Code section 3294." *Id.* ¶ 150. Plaintiffs seek to amend their prayer for relief in the SAC for "punitive and exemplary damages against Defendants Sinha[] and Ladha pursuant to Civil Code section 3294" in addition to the relief sought in the FAC. *See id.* at 48. Plaintiffs assert allegations regarding the actions of the proposed individual defendants in support of other claims in the SAC, including in support of Plaintiffs' fifth cause of action for unfair business practices, and of Plaintiffs' sixth cause of action for tortious interference with prospective economic damage. *See id.* ¶¶ 125, 134.

The undersigned finds that Mr. Ladha, Mr. Sinha, and G6HF are necessary parties who each have "an interest in the controversy[,]" *CP Nat'l Corp.*, 928 F.2d at 912, and that the failure to join them would "lead to separate and redundant actions," *Boon*, 229 F. Supp. 2d at 1022. Defendants are incorrect that Plaintiffs' SAC seeks damages to be taken solely by the G6 Defendants as joinder of Mr. Ladha and Mr. Sinha are necessary for Plaintiffs' claims seeking punitive damages against those defendants. Additionally, the proposed SAC's allegations bolster facially valid claims against the individual defendants such that denial of joinder of these defendants could lead to redundant litigation in state court. *See Reyes v. FCA US LLC*, No. 1:20-cv-00833-DAD-SKO, 2020 WL 7224286, at *5 (E.D. Cal. Dec. 8, 2020) ("Here, the court finds that plaintiff asserts a facially valid negligent repair claim against [auto service center] in his proposed amended complaint. The court

also agrees that if it denied joinder of [auto service center] in this action, plaintiff's pursuit of a separate action against [auto service center] in state court would be redundant."). Indeed, that Defendants contend the individual defendants "acted in the scope of their employment to protect G6 and recover the large amount of money owed by Plaintiffs" and that "Plaintiffs must pierce the corporate veil and *prove* these individuals were actually alter egos of G6[,]" (Doc. 42 at 9-10) (emphasis added), demonstrates a live controversy as to the merits of Plaintiffs' allegations and claims involving Mr. Sinha and Mr. Ladha. Finally, as discussed further herein (*see infra*), Defendants are wrong to assert that neither Mr. Sinha nor Mr. Ladha may be liable for conversion because "they acted in the scope of their employment" and, accordingly, Plaintiffs "must pierce the corporate veil" to prove the individual defendants were the alter egos for G6HF. *See Frances T. v. Green Owners Ass'n*, 42 Cal. 3d 490, 508 (1986) ("Directors are liable to third persons injured by their own tortious conduct regardless of whether they acted on behalf of the corporation and regardless of whether the corporation is also liable. … lability does not depend on the same grounds as 'piercing the corporate veil,'… , but rather on the officer or director's personal participation or specific authorization of the tortious act.") (internal and external citations omitted).

Defendants do not argue whether G6HF is a necessary party for joinder under Rule 19(a), contending only that Plaintiffs erroneously allege Accor "is the predecessor in interest of G6 Hospitality LLC as related to the Franchise Agreement" and that G6HF is the proper entity to be substituted in this action. (Doc. 42 at 2 n.1). Therefore, because Plaintiffs show G6HF is the proper entity and "actual contracting party" to the Franchise Agreements at issue, the undersigned also finds G6HF is a necessary party under Rule 19(a).

Because Plaintiffs show each proposed defendant—including non-diverse defendant Mr. Ladha—is a necessary party for joinder under Rule 19(a), the undersigned finds that this factor weighs in favor of joinder.

**B. Statute of Limitations**

As noted above, Plaintiffs' SAC seeks to add an eighth cause of action for conversion against Defendants that seeks punitive damages against Mr. Ladha. *See* Ex. A ¶¶ 149-50. "California Code of Civil Procedure § 338(c) provides a three-year limitations period for claims

for conversion of personal property." *Johnson v. Altamirano*, 418 F. Supp. 3d 530, 559 (S.D. Cal. 2019) (citing *AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 143 Cal. App. 4th 631, 639 (2006)). "Ordinarily the statute of limitations applying in conversion actions begins to run from the date of the conversion even though the injured person is ignorant of his rights." *Id.* (citing *Bennett v. Hibernia Bank*, 47 Cal. 2d 540, 561 (1956)).

Plaintiffs assert the applicable statute of limitations "have not yet run" over their claims, and Plaintiffs "would not be strictly precluded from filing a new, original action against Mr. Ladha and G6GF in state court." (Doc. 26 at 16). Defendants do not address the factor of statute of limitations in opposition to Plaintiffs' motion. *See* (Doc. 42 at 8).

Because the parties do not contest that the statute of limitations would permit a new action in state court, this factor does not weigh in favor of permitting joinder of the proposed Defendants.

**C. Timeliness**

1. Governing Authority

"When determining whether to allow amendment to add a nondiverse party, courts consider whether the amendment was attempted in a timely fashion." *Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1083 (C.D. Cal. 1999). "There are no well-developed guidelines for evaluating [] timeliness" but courts generally "find delays of over six months after removal to be untimely." However, "even in cases of considerable delays, courts do not give this factor much weight if the case is in its early stages and the delay does not appear to be prejudicial." *Lara v. Bandit Indus., Inc.*, No. 2:12-cv-02459-MCE-AC, 2013 WL 1155523, at *3 (E.D. Cal. Mar. 19, 2013) (citation and quotation omitted).

2. Analysis

Here, the case has not yet been scheduled and discovery has not opened. As noted above, the Court is holding all requests for writs of attachment in abeyance pending resolution of the instant motion, and no dispositive motions are pending before the Court. *See* (Doc. 40). The action was pending in state court for only approximately five weeks before Defendants removed, and Plaintiffs' instant motion to amend and to remand was filed approximately one month after Defendants answered in this Court. In conceding that Plaintiffs' motion is not the product of

"outrageous" delay, Defendants' only argument that delay nevertheless is undue is that Plaintiffs purportedly knew about the facts and the new defendants to be added before the case was removed to this Court. (Doc. 42 at 6). Indeed, a finding that the party seeking to amend and remand knew about the facts and theories of liability raised by the amendment long before seeking to amend may weigh against permitting amendment and remand. *E.g., AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). Here, however, the undersigned is persuaded that Plaintiffs reasonably pursued seeking to amend within a reasonable time taking into account the expedited nature of the state court proceedings, negotiations among the parties, and Plaintiffs' discovery of facts bearing on the merits of the proposed amendments only during the course of the state court litigation. *See* (Doc. 26 at 16-17; Doc. 45 at 4-5). In sum, while Plaintiffs engaged in some delay, such delay was not undue and the undersigned finds this factor weighs in favor of amendment. *IBC*, 125 F. Supp. 2d at 1012; *see Reyes*, 2020 WL 7224286, at *6 ("Here, plaintiff filed his motion for leave to amend his complaint on July 16, 2020, which was 77 days after he filed his original complaint, just 37 days after defendant answered plaintiff's original complaint, 34 days after defendant removed this action, and 30 days after defendant served notice of removal.").

**D. Whether Joinder is Intended to Defeat Federal Jurisdiction**

1. Governing Authority

"[T]he motive of a plaintiff in seeking the joinder of an additional defendant is relevant to a trial court's decision to grant the plaintiff leave to amend his original complaint." *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1376 (9th Cir. 1980). "[A] trial court should look with particular care at such motive in removal cases, when the presence of a new defendant will defeat the court's diversity jurisdiction and will require a remand to the state court." *Id.* However, "[s]uspicion of diversity destroying amendments is not as important now that 1447(e) gives courts more flexibility in dealing with the addition of such defendants." *IBC*, 125 F. Supp. 2d at 1012.

2. Analysis

Defendants' argument—that "only logical and viable reason for Plaintiffs to join" individual defendants Mr. Ladha and Mr. Sinha "is for the sole purpose of destroying diversity" given Plaintiffs can obtain the relief they seek solely through the G6 Defendants "without having

to attempt to pierce the corporate veil and force the parties to litigate tangential matters and claims" (Doc. 42 at 9)—is unconvincing. As set forth above, the individual defendants, in fact, may be subject to personal liability apart from any liability found as to any corporate defendant—without need for Plaintiffs to "pierce the corporate veil." Though "one could justifiably suspect that Plaintiffs' [m]otion was caused by the removal rather than evolution of the case," the fact that Plaintiffs seek to add a non-diverse defendant after removal does not, by itself, warrant the imputation of an improper motive to Plaintiffs. *Bandit Indus., Inc.*, 2013 WL 1155523, at *4 ("Because the Court does not construe Plaintiffs' preference for state court any more negatively than Defendants' preference for federal court, this factor is neutral or weighs in favor of granting Plaintiffs' Motion."). Plaintiffs have shown that Mr. Ladha is a necessary party to this action under Rule 19(a), and as explained below, Plaintiffs' claims against Mr. Ladha in the proposed SAC appear facially valid such that Plaintiffs' request for joinder does not appear *solely* to destroy diversity. *See Sabag v. FCA US, LLC*, No. 2:16-cv-06639-CAS (RAOx), 2016 WL 6581154, at *5 (C.D. Cal. Nov. 7, 2016) (finding plaintiff's claims against diversity-destroying defendant "facially legitimate and, therefore, plaintiff's motive is not solely to destroy diversity."); *cf. Munoz v. Walmart Inc.*, No. 2:19-cv-08333-ODW-JPR, 2020 WL 91499, at *2 (C.D. Cal. Jan. 8, 2020) (noting courts routinely exercise discretion to deny joinder when it appears that plaintiff's sole motivation is to avoid federal court). Therefore, the undersigned finds this factor weighs in favor of granting Plaintiffs' motion.

**E. Whether the Claims Against the New Defendants Appear Valid**

1. <u>Governing Authority</u>

"To state a facially viable claim for purposes of joinder under section 1447(e), a plaintiff need not allege a claim with particularity or even plausibility." *Dordoni v. FCA US LLC*, No. EDCV 20-1475 JGB (SHKx), 2020 WL 6082132, at *5 (C.D. Cal. Oct. 15, 2020). A court "need only determine whether the claim 'seems' valid." *Freeman v. Cardinal Health Pharmacy Servs., LLC*, No. 2:14-cv-01994-JAM-KJN, 2015 WL 2006183, at *3 (E.D. Cal. May 1, 2015) (citing *IBC*, 125 F. Supp. 2d at 1012-13); *Sabag*, 2016 WL 6581154, at *6 ("In considering the validity of plaintiff's claims, 'the [c]ourt need only determine whether the claim seems valid' which is not the

same as the standard in either a motion to dismiss or a motion for summary judgment.") (citation omitted). "The existence of a facially legitimate claim against the putative defendant weighs in favor of permitting joinder under section 1447(e)." *Taylor v. Honeywell Corp.*, No. 09-cv-4947-SBA, 2010 WL 1881459, at *3 (N.D. Cal. May 10, 2010).

2. <u>Analysis</u>

Plaintiffs seek to add a conversion claim against non-diverse defendant Mr. Ladha. In their opposition, Defendants argue that Plaintiffs' request for relief adequately may be obtained through the existing G6 corporate defendants and that for Plaintiffs' claims against the individual defendants to move forward, Plaintiffs "must pierce the corporate veil and prove these individuals were actually the alter egos of G6." (Doc. 42 at 9-10).

In California, conversion "is the wrongful exercise of dominion over personal property of another." *Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1019 (E.D. Cal. 2010) (citing *Moore v. Regents of the Univ. of Cal.*, 51 Cal. 3d 120, 137 (1990)). "A cause of action for conversion requires allegations of [a] plaintiff's ownership or right to possession of property; [the] defendant's wrongful act toward or disposition of the property, interfering with [the] plaintiff's possession; and damage to [the] plaintiff[.]" *Id.* (citing *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 384, 385 (2007)). "Conversion cases permitting an action for conversion of money typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others ... [where] the amount of money converted was readily ascertainable." *Id.*

Here, the proposed SAC demonstrates a facially legitimate conversion claim against Mr. Ladha. Plaintiffs allegations against Mr. Ladha—that he is "individually liable for conversion because [he] actively participated in the wrongful exercise of dominion over Plaintiffs' funds" as "Vice President Ladha personally directed the implementation of the Brand Collect scheme and the interception of the funds[,]" leading to damages "not less than $1,060,313, plus interest," including punitive damages against Mr. Ladha, *see* Ex. A ¶¶ 149-50—demonstrate Mr. Ladha's involvement in the conversion of Plaintiffs' funds that led to Plaintiffs' damages. Further, that Plaintiffs can recover damages against the existing Defendants does not preclude joinder of Mr. Ladha or

otherwise cast the validity of the conversion claim as proposed to be pleaded in doubt. *See Reyes*, 2020 WL 7224286, at *8 (finding that "Plaintiff's possibility of recovery against defendant FCA does not preclude joinder of [the proposed defendant]."). Therefore, the undersigned finds this factor weighs in favor of amendment.

**F. Prejudice to Plaintiffs**

1. Governing Authority

"Prejudice exists if the proposed defendant is 'crucial' to the case. Prejudice does not exist if complete relief can be afforded without that defendant." *Sabag*, 2016 WL 6581154, at *6 (C.D. Cal. Nov. 7, 2016) (citation and quotation omitted).

2. Analysis

Plaintiffs contend that denying joinder would cause severe prejudice in requiring them to initiate separate but duplicative litigation in state court to seek full relief against the proposed individual defendants. (Doc. 26 at 23-24). The undersigned agrees. Plaintiffs' facially legitimate claims against the proposed individual defendants arise out of the same set of facts as the claims against the existing named G6 corporate Defendants. Plaintiffs would be required to pursue two separate and substantially similar actions in two different forums if joinder were denied. Thus, the undersigned finds that precluding joinder of the proposed individual defendants would prejudice Plaintiffs. *See, e.g., IBC*, 125 F. Supp. 2d at 1013 ("denying the amendment would require Plaintiff to choose between redundant litigation arising out of the same facts and involving the same legal issues or foregoing its potential claims against Mr. Connolly, while allowing amendment will not prejudice the Defendants as discovery has not yet begun."); *Bandit Indus., Inc.*, 2013 WL 1155523, at *4-5 (finding that preclusion of joinder would result in prejudice from "duplicative and redundant litigation" that would "result in a waste of judicial and the Plaintiffs' resources, as well as risk inconsistent results," and require plaintiff to either "abandon a viable claim … or to initiate a duplicative litigation in state court. Thus, this factor favors granting Plaintiffs' Motion.").

* * * * *

Because the *IBC* factors weigh in favor of amendment, the undersigned will recommend Plaintiffs' motion be granted. As joinder of non-diverse defendant Mr. Ladha would defeat

diversity jurisdiction, and remand is required if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction" (28 U.S.C. 1447(c)), the undersigned also will recommend that this action be remanded to state court.

**IV. Conclusion and Recommendation**

Accordingly, it is HEREBY RECOMMENDED that:

1. Plaintiffs' motion for leave to file a second amended complaint and to remand (Doc. 26) be GRANTED.
2. Plaintiffs be DIRECTED to file the proposed second amended complaint (Doc. 26-1 at 5-49 ("Ex. A") as a standalone entry on the docket.
3. This action be REMANDED to state court following the filing of the proposed second amended complaint given that inclusion of newly added Defendant Anuj Ladha, asserted to be a California citizen, deprives the Court of subject matter jurisdiction under 28 U.S.C. § 1332.

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent any party wishes to refer to any exhibit(s), that party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **July 16, 2026**

UNITED STATES MAGISTRATE JUDGE